IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-365-FL

MICHAEL J. MORGAN,                              )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )
                                                )                    ORDER
RICKY J. SPIVEY, in his individual and          )
official capacities as a Wake County            )
Sheriff's Deputy, CASEY L. MILLER, in           )
his individual and official capacities as a     )
Wake County Sheriff's Deputy, JOSHUA            )
K. LEGAN, in his individual and official        )
capacities as a Wake County Sheriff's           )
Deputy, DONNIE HARRISON, in his                 )
official capacity as Sheriff of Wake            )
County, North Carolina, THE OHIO                )
CASUALTY INSURANCE COMPANY,                     )
individually, and as a subsequent               )
subsidiary of LIBERTY MUTUAL                    )
INSURANCE COMPANY, as SURETY,                   )
                                                )
                    Defendants.[1]              )


        This matter is before the court on defendants Ricky J. Spivey ("Spivey"), Casey L. Miller

("Miller"), Joshua K. Legan ("Legan"), and Donnie Harrison's ("Harrison") (collectively, "Sheriff

Defendants") motion for partial judgment on the pleadings as to plaintiff's amended complaint and

defendant Ohio Casualty Insurance Company's ("Ohio Casualty") motion to dismiss.  (DE 76, 71).

The issues raised have been briefed fully and in this posture are ripe for ruling.  For the following

reasons, the motions before the court are GRANTED IN PART and DENIED IN PART.

---

[1] The court constructively amends the caption of this order to reflect the dismissal previously of formerly-named
defendant Wake County, North Carolina.

## STATEMENT OF THE CASE

Plaintiff commenced this action against Sheriff Defendants and Wake County, North Carolina on June 10, 2016, alleging various claims against the parties including: negligence, gross negligence, violation of civil rights pursuant to 42 U.S.C. §1983, suit on sheriff's bond, assault and battery, false imprisonment, malicious prosecution, and civil conspiracy. On September 6, 2016, defendant Wake County, North Carolina voluntarily was dismissed. On September 15, 2016, Sheriff Defendants filed a motion for partial judgment on the pleadings, which plaintiff responded to on October 6, 2016, also filing a motion to amend complaint, in order to join Ohio Casualty. On November 14, 2016, this court granted plaintiff's motion to amend and denied as moot Sheriff Defendants' motion for partial judgment on the pleadings. On November 23, 2016, plaintiff filed its amended complaint, alleging:

1) Negligence/gross negligence against defendant Harrison, in his official capacity (first cause of action);

2) Violation of civil rights - 42 U.S.C. § 1983 by defendants Spivey, Miller, and Legan (second cause of action);

3) Suit on Sheriff's Bonds - N.C. Gen. Stat.§§ 162-8 & 58-76-5 (third cause of action);

4) Negligence/gross negligence of defendant Spivey in his individual and official capacities (fourth cause of action);

5) Assault and battery by defendant Spivey in his individual and official capacities (fifth cause of action);

6) Negligence/gross negligence of defendant Miller in his individual and official capacities (sixth cause of action);

7) Assault and battery by defendant Miller in his individual and official capacities (seventh cause of action);

8) Negligence/gross negligence of defendant Legan in his individual and official capacities (eighth cause of action);

9) Acts of malice, acts of corruption, and acts outside the scope of duties (ninth cause of action);

10) False imprisonment by defendants Spivey, Miller, and Legan in their individual and official capacities (tenth cause of action);

11) Malicious prosecution by defendants Spivey, Miller, and Legan (eleventh cause of action);[2]

12) Civil conspiracy by defendants Spivey, Miller, and Legan (twelfth cause of action); and

13) Punitive damages (thirteenth cause of action).

Currently before the court are two motions: Ohio Casualty's motion to dismiss pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, filed January 20, 2017, and Sheriff Defendants' motion for partial judgment on the pleadings, as to plaintiff's amended complaint, also pursuant to Rule 12(c), filed February 15, 2017. All defendants assert that plaintiff's claims against Sheriff Defendants in their official capacities and against the suit on sheriff's bond are time barred and that plaintiff's claim of civil conspiracy is not cognizable. Sheriff Defendants additionally assert that certain claims must be dismissed because they are barred by public official immunity and that plaintiff cannot recover punitive damages for actions alleged to be taken by Sheriff Defendants in their official capacities. Ohio Casualty additionally asserts that certain claims must be dismissed because they do not state a claim or, in the case of plaintiff's ninth cause of action alleging acts of malice, the claim is not a cause of action.[3]

---

[2]Although not clearly designated, the court presumes that plaintiff brings this claim against defendants Spivey, Miller, and Legan in both their official and individual capacities as plaintiff did regarding all other state-law claims against Sheriff Defendants.

[3]The parties' briefing was supplemented at the court's direction regarding the relevance of <u>Manuel v. City of Joilet, Ill.</u>, 137 S. Ct. 911 (2017).

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.

Plaintiff is the owner and chief operator of Mike's Tree Service, a successful business with multiple employees which provides tree and brush removal services for customers in and around the Wake County area in North Carolina.

A.     Shooting on July 5, 2013

On July 5, 2015, plaintiff and one of his employees, Charlie Johnson ("Johnson") were working on a tree and brush removal job for an individual in Apex, North Carolina.  The job required plaintiff and his employee to cut down large amounts of tree limbs and brush on the property and then remove the debris from the property in plaintiff's Dodge Ram diesel truck.

Plaintiff uses his private property, a large field located at 1116 Wimberly Road, as a dumping site for brush and debris for his business, and this lot is marked clearly with "No Trespassing" signs. The field is approximately 300 yards in length, shaped like a long piece of pie, with the south end of the field being the widest part; this southern part is open and flat with over 7,500 square feet of surface area that can be easily driven on by cars and trucks of all types.  There is a dirt roadway down the center of the field from north to south and multiple vehicle entrance points, including three entry points that were often used and were on the day in question open and obvious as entries to or exits from the property.

The community and Wake County Sheriff's Office, in particular the individual defendants, are aware that the field is plaintiff's and how he uses the field.  The deputies from Wake County Sheriff's Office have driven their patrol cars in and out of plaintiff's field on numerous occasions and were familiar with the multiple entrances to the field.

On the day in question, plaintiff and his employee had dumped several loads on the lot, by the same route, using the northern-most entrance to carefully turn off Wimberly Road, where they would park the truck on the north end of the field to remove debris by hand after removing straps holding the debris in place. During the day, plaintiff, Johnson, and the individual for whom they were working, observed multiple times a patrol car drive by their location. At approximately 7:00 p.m., plaintiff and Johnson were driving toward plaintiff's field with another load and passed defendant Spivey in his patrol car in the opposite lane. Plaintiff saw in his rearview mirror defendant Spivey quickly slowing down and using a side road to turn around. At that time, plaintiff was driving safely and turned into the northern-most entrance carefully, losing no debris.

Plaintiff and Johnson proceeded to unload the debris in the back of the truck, when defendant Spivey drove by, watching plaintiff and Johnson from the road. Defendant Spivey continued down the road and turned in the southern-most entrance and, using the dirt road that runs through the center of the property, approached plaintiff and Johnson and parked near plaintiff's truck. Once parked, defendant Spivey rolled down his window and yelled for plaintiff to approach the patrol car. When plaintiff did, defendant Spivey asked for and received plaintiff's license through the window of his patrol car.

Defendant Spivey later told investigators, among others, and testified at plaintiff's criminal trial that plaintiff had been driving carelessly and recklessly in entering his private field, causing tree limbs or debris to fly out of the back of his truck. Defendant Spivey additionally made statements and/or testified that the other reason for his traffic stop of plaintiff was that plaintiff was known to him as someone who had driven on prior occasions without a license or with an expired registration.

Spivey ran plaintiff's license tag or registration information after initiating the traffic stop. Once Spivey initiated the traffic stop, he informed his dispatcher that he was beginning a routine traffic stop of plaintiff.

Defendants Miller and Legan heard the communication over their radio system and drove their separate patrol cars at high speeds, through two-lane residential streets, towards defendant Spivey and plaintiff. According to the amended complaint, the dash-cam video of defendant Miller's patrol car during this drive shows defendants Miller and Legan reaching speeds of over 100 miles per hour, with audible tire screeching around curves in the road, and with their patrol cars forcing civilian vehicles off the roadway and onto the shoulder. On numerous occasions, the dashcam video shows the two patrol cars narrowly missing impact with the side panels of several civilian cars by inches as they passed. Allegedly, defendants Miller and Legan sought to force an improper encounter with plaintiff so they could arrest him.

The dashcam video from defendant Miller's patrol car as he was heading to the scene shows no tree limbs or debris present on the roadway or on the grass shoulder. After arrival, defendants Miller and Legan parked on the shoulder of Wimberly Road and plaintiff's field and approached on foot. At this time, defendant Spivey was still looking up plaintiff's information and/or writing plaintiff a traffic citation. Defendant Spivey directed defendants Miller and Legan to search around plaintiff's truck to see if plaintiff or his employee had thrown out any contraband or evidence. None was found. Defendant Legan additionally opened plaintiff's truck and searched all areas of the truck's cab, consoles, and glove box. Plaintiff called out to defendant Legan that plaintiff did not consent to the search and that defendant Legan could not search without a search warrant. Defendant Legan and/or Miller responded "shut the f*** up" and "when you go to law school you can tell us what we can and cannot do."

Johnson approached the vehicle to help locate plaintiff's registration. In response, defendant Legan yelled "Step the f*** back from the vehicle" and again stated that they "did not need permission to search the truck." No contraband, evidence, or weapons were found.

At all times plaintiff had remained calm and obedient. Defendant Spivey finished writing a traffic citation to plaintiff for expired registration, driving while license is revoked, and for careless and reckless driving. Plaintiff asked defendant Spivey how he could be charged with careless and reckless driving on his own property. Defendant Spivey stated he would just have to "sort it out in court." Plaintiff then asked if he was free to go, and defendant Spivey responded yes, telling plaintiff that he was free to leave and was not under arrest.

Plaintiff told his employee to wait outside plaintiff's truck. Plaintiff then drove safely along the dirt road through the center of his property, and then increased his speed and performed several "fishtails" and "donuts." Johnson heard one of the Sheriff Defendants say out loud "if he touches the road, he's ours." Defendant Spivey performed a three-point turnaround and drove to plaintiff's truck, passing an exit that could have been used by Spivey to leave the field. When plaintiff realized that defendant Spivey's car was approaching, plaintiff stopped his truck completely. Defendant Spivey drove within feet of plaintiff's truck. During this time Johnson had walked down the dirt road and was standing less than 20 to 30 feet away.

Defendant Spivey yelled at plaintiff to move in an aggressive manner. Plaintiff responded "you've got plenty of room." Allegedly, defendant Spivey had ample room to go around plaintiff's stopped truck and take the southern-most exit off the property or to turn around. Defendant Spivey immediately exited his vehicle in an aggressive manner, extended his baton, and swung twice, hitting plaintiff while still in his truck, both times in the head. Defendant Spivey then reached his hands and arms inside of plaintiff's truck and grabbed plaintiff's body and shirt about the shoulders

and neck and began to try to physically pull plaintiff out of the driver's side window. At this time, plaintiff was 5'6" and weighed 150 pounds. Defendant Spivey is larger, over six feet tall.

From their patrol cars, defendants Legan and Miller watched defendant Spivey strike plaintiff. They then got out of their cars and ran towards plaintiff's truck. Defendant Legan drew his Taser weapon and defendant Miller drew his .357 service pistol. Defendant Miller ran to the passenger window of the truck with his pistol loaded, cocked, and pointed directly at plaintiff. Defendant Legan was directly behind Spivey. Plaintiff's truck was still in the drive gear and his foot was on the brake. As he was being pulled by defendant Spivey, plaintiff's foot came off the brake, and the truck began idling forward.

As soon as the truck moved, defendant Spivey dropped plaintiff back into the driver's seat where he landed with both hands on the steering wheel, and plaintiff immediately put his foot back on the brake to stop the truck. The moment plaintiff pressed the brake, defendant Miller fired twice, hitting plaintiff both times. The first bullet became lodged in the bones of plaintiff's left leg and the second ripped through plaintiff's hand that was holding onto the steering wheel. After plaintiff watched his three fingers on his right hand explode, he put the truck in park with his left hand, opened his door, and collapsed on the ground, yelling, "I need EMS! I need an ambulance!"

Johnson called out "where did you shoot him?" Defendant Miller then turned his gun on Johnson, screaming for Johnson to put his hands behind his head and to get on the ground. After Johnson did so, defendant Miller ran to Johnson, rammed his knee into Johnson's back, handcuffed him, and left him lying face-down on the ground. Johnson continued to ask where defendant Miller had shot plaintiff. Defendant Spivey walked around plaintiff's truck and told Johnson, "That's what happens when you play rough with the big dogs."

With plaintiff laying on the ground crying and Johnson on the ground handcuffed, defendants Spivey, Miller, and Legan huddled together for several minutes of discussion. They continued to talk privately until other personnel arrived on the scene in response to their radio call that shots had been fired.

B.      After the Shooting on July 5, 2013

Following the shooting, plaintiff was taken into custody. Defendants Spivey, Miller, and Legan all made statements to investigators, supervisors, other third parties, and in court that plaintiff had tried to hurt or kill defendant Spivey by "flooring" the gas pedal, causing the tires of plaintiff's truck to spin and throw up dirt, and thereby dragging defendant Spivey. The State of North Carolina charged plaintiff with assault with a deadly weapon on a law enforcement officer; assault inflicting serious injury on a law enforcement officer; assault on a law enforcement officer; assault; felony habitual assault; resist, delay, or obstruct a law enforcement officer; and kidnaping a law enforcement officer.

Plaintiff entered Wake County jail on July 8, 2013, after time at Duke University Medical Center for emergency treatment, and then was transferred to North Carolina Central Prison Hospital the following day for continued care of his hand and knee wounds. Plaintiff was transferred to Craven County Correctional Institution on August 8, 2013. Plaintiff remained incarcerated until he was able to bond out on November 15, 2013, at which time he was released on electronic house arrest.

While incarcerated, plaintiff was mistreated by prison staff and caretakers on multiple occasions. Plaintiff required medication for his injuries and treatment, and numerous times prison staff mistakenly forced him to take the wrong medication that belonged to another inmate. Plaintiff endured time away from his family, humiliation, fear, anxiety, and sub-standard medical care in the

prison system for his severe injuries, including an instance of severe infection in his hand as a result of staff refusing for weeks to change his dressings.

The events described generated significant publicity. Plaintiff's business thereby suffered and still suffers due to this negative attention.

C.    Trial

At jury trial, the court dismissed kidnaping charges against plaintiff at the close of the state's evidence. On June 5, 2014, after 30 minutes of deliberation, the jury unanimously found plaintiff not guilty of all remaining charges. Plaintiff remained under house arrest for several weeks following his acquittal. Plaintiff filed this suit on June 10, 2016.

## COURT'S DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,</u> 591 F.3d 250, 255 (4th Cir. 2009).

Turning to the standard for a motion for judgment on the pleadings, Rule 12(c) allows a party to move for judgment on the pleadings, "[a]fter the pleadings are closed–but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). "The standard for Rule 12(c) motions is the same as applied to Rule 12(b)(6) motions, which should only be granted if, 'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" <u>Priority Auto Grp., Inc., v. Ford Motor Co.,</u> 757 F.3d 137, 139 (4th Cir. 2014) (citing <u>Edwards v. City of Goldsboro,</u> 178 F.3d 231, 244 (4th Cir. 1999)).

B.     Analysis

Defendants argue that certain of plaintiff's claims 1) are barred because of sovereign immunity; 2) are barred because of public officer's immunity; 3) are barred because of statute of limitations; or 4) fail to state a claim or are not cognizable.[4]  The court will address each argument in turn below.

1.      Sovereign Immunity

Defendants argue that plaintiff's state law claims against Sheriff Defendants in their official capacities are barred because of sovereign immunity.

In North Carolina, "[i]t is well settled that pursuant to the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity" and that a "suit against a public official in his official capacity is a suit against the State." <u>White v. Trew,</u> 366 N.C. 360, 363 (2013) (interior

---

[4]Defendants do not challenge presently plaintiff's claims regarding violation of his civil rights pursuant to 42 U.S.C. § 1983 (second cause of action) or malicious prosecution (eleventh cause of action).

11

citation omitted). Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity. See Isenhour v. Hutton, 350 N.C. 601, 610 (1999) (recognizing police officers are considered public officials).

However, a sheriff may waive governmental immunity in at least two ways, by the purchase of a bond, N.C. Gen. Stat. § 58–76–5, or by purchase of liability insurance, N.C. Gen. Stat. § 153A–435(a). Waiver by purchase of bond or liability insurance is only to the extent of the amount of coverage provided. See Hill v. Medford, 158 N.C. App. 618, 623 (2003) (J. Martin dissenting), reversed per curiam for reasons stated in the dissent, 357 N.C. 650 (2003) ("Due to [defendant's] purchase of a $20,000 bond, plaintiff may potentially recover up to that amount . . . ."); Evans v. Hous. Auth. of City of Raleigh, 359 N.C. 50, 57 (2004) (citing N.C. Gen. Stat. § 153A–435(a) ("purchase of liability insurance waives county's governmental immunity to the extent of coverage")); see also White v. Cochran, 229 N.C. App. 183, 189–90 (2013) ("Thus, both the purchase of a bond and the purchase of liability insurance only operate as a waiver of governmental immunity to the extent of the coverage provided by those insuring instruments.").

a.    Sovereign Immunity Waiver By Purchase of Sheriff's Bond

N.C. Gen. Stat. § 58-76-5 requires "[e]very person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties"; upon doing so, "every such officer and the sureties on the officer's official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office." (Emphasis added).

North Carolina courts have made it clear that a surety is a necessary party to proceedings against the sheriff and sheriff's deputies in their official capacities. See N.C. Gen. Stat. § 58-76-5; State ex rel. Cain v. Corbett, 235 N.C. 33, 39 (1952) ("if the defendant Thompson were acting in the

capacity of deputy sheriff at the time of the alleged assault and false arrest, he and the surety on his bond, and the Sheriff and the surety on his bond, would be proper and necessary parties to the action . . . ."); see also Summey v. Barker, 142 N.C. App. 688, 691 (2001) (internal citation omitted) ("The statutory requirement of a bond removes the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a part to the action").

North Carolina courts have also made clear that a claim is timely only if the necessary party is specifically named or joined within the applicable statue of limitations period. See Estate of Fennell ex rel. Fennell v. Stephenson, 354 N.C. 327, 332 (2001).  In Fennell, the court dismissed a claim for failure to name the sheriff in official capacity, not just individual capacity, within the applicable statue of limitations, noting that "[i]n North Carolina, it is well-established law that if a plaintiff does not name the party responsible for his alleged injury before the statute of limitations runs, his claim will be dismissed."  Id.; see also Bailey v. Handee Hugo's, Inc., 173 N.C. App. 723, 728 (2005) (affirming grant of motion to dismiss, holding "[t]here was no way for the court to cure the defect of failing to join the responsible party where the statute of limitations had expired and any attempt to add them as a party would have been futile").

Defendant stresses the applicability of Mellon v. Prosser, 126 N.C. App. 620 (1997) (Wynn, J. dissenting), aff'd in part, rev'd in part for reasons stated in the dissent, 347 N.C. 568 (1998) (per curiam) to this inquiry.  Mellon addresses whether plaintiff's complaint is sufficient to meet the jurisdictional requirements of N.C. Gen. Stat.§ 58-76-5, not whether a motion to amend a complaint to name the surety would be barred by the applicable statue of limitations.  Mellon does make clear, however, there are limits to the willingness of the North Carolina Supreme Court to allow amendment to the complaint to add a surety and that failure to add the surety is fatal to plaintiff's claims: "Plaintiff, however, made no attempt to amend his action contending that he 'still had plenty

of time . . . to move to . . . join the surety as a party of this action.'  The requirement of naming the surety in an action against a sheriff is clear cut and jurisdictional.  And while we permit the liberal amendment of actions to conform with this requirement, to do so in this case amounts to an abuse of the system.  Since the name of a sheriff's surety is easily discoverable, absent some compelling reason showing why the complaint was not amended prior to the denying of the motion to dismiss, I would not allow an amendment of this action at this time."  <u>Mellon</u>, 126 N.C. App. at 625.

Although the North Carolina Supreme Court has not directly addressed the question of when plaintiff's claims are timely where plaintiff is required to join a sheriff's surety, based on the above precedent, time of joinder of surety, measured from the date of the motion to amend, determines the filing date for purposes of statute of limitations.  <u>See</u> <u>Mauney v. Morris</u>, 316 N.C. 67, 71-72 (1986) ("[t]he date of the filing of the motion, rather than the date the court rules on it, is the crucial date in measuring the period of limitations. The timely filing of the motion to amend, if later allowed, is sufficient to start the action within the period of limitations."); <u>Fennell</u>, 354 N.C. at 332.  Plaintiff filed his motion to amend to join Ohio Casualty on October 6, 2016 and thus adequately pleaded waiver of sovereign immunity as to Sheriff Defendants as of that date.[5]

In accord with applicable law, plaintiff's damages will be limited to the extent to which the sheriff is covered under the bond purchased.  <u>See</u> <u>White</u>, 229 N.C. App. at 189-90.  Sheriff

---

[5]Plaintiff's argument that the operative date for determining timeliness of his claims is June 10, 2016, the date this action commenced, must fail.  Certainly, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>United States v. Aramony</u>, 166 F.3d 655, 661 (4th Cir.1999) (citing <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988)).  This doctrine applies "as much to the decisions of a coordinate court in the same case as to a court's own decisions." <u>Christianson</u>, 486 U.S. at 816.  However, the law of the case doctrine applies to those questions "actually decided" and "those decided by necessary implication," but it does not apply to "questions which might have been decided but were not." <u>Sejman v. Warner–Lambert Co., Inc.</u>, 845 F.2d 66, 69 (4th Cir.1988) (citations omitted).  Because the court allowed plaintiff to amend his complaint, the court dismissed Sheriff Defendant's motion for partial judgment on the pleadings as moot; it did not address or decide which of plaintiff's claims are timely and which are not.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 347 n.18, (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.").

Defendants have requested the court explicitly to limit plaintiff's recovery under plaintiff's claims to the amount of the surety bond, asserting that defendant Harrison has bonds totaling $20,000.00 issued on his behalf and therefore would have immunity for any claim in excess of this amount. (DE 77 at 12-13; DE 64 at Ex. B, B-1, and C). Plaintiff agrees that defendant Harrison has bonds totaling $20,000.00. (DE 79 at 18). However, plaintiff disagrees that is the limit of his recovery, arguing that Sheriff Defendants are incorrectly aggregating plaintiff's causes of actions and the Sheriff Defendants' wrongful conduct. Plaintiff asserts he can recover the $20,000.00 limit in multiples based on distinct causes of action and distinct alleged wrongful conduct. (DE 79 at 18-19.)

Plaintiff offers no example, and the court has found none, where North Carolina courts have allowed recovery in excess or in multiples of the amount of a sheriff's bond. There are, however, numerous examples of courts, including this court, determining that waiver is only for the amount of the bond, regardless of the number of claims or the number of defendants. See Russ v. Causey, 732 F. Supp. 2d 589, 611-12 (E.D.N.C. 2010), aff'd in part, 468 F. App'x 267 (4th Cir. 2012) ("defendants do not enjoy immunity from suit against them in their official capacities for any amount not exceeding $25,000.00" and "the court concludes that exclusion in the [liability insurance policy] is written so as to retain immunity for liability in any amount above the $25,000.00 covered by the official bond"); Oliver v. Harper, No. 5:09-CT-3027-H, 2011 WL 1104134, at *10 (E.D.N.C. Mar. 22, 2011) ("Defendants are therefore immune from suit against them in their official capacities for damages in excess of the $25,000.00 surety bond"); Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 270 (M.D.N.C.), on reconsideration in part, 136 F. Supp. 3d 719 (M.D.N.C. 2015) ("the court will limit Plaintiffs' State law claims against the Sheriff (Counts III and V) to the $25,000 amount of the bond").

On this basis, plaintiff's official capacity claims may proceed, subject to the time bar limitations discussed further below. The court limits recovery on any of plaintiff's surviving state-law claims against the Sheriff Defendants in their official capacities to the $20,000.00 amount of the bond.

   b.  Sovereign Immunity Waiver By Purchase of Liability Insurance

  Similar to waiving liability by purchasing a bond, a county (or sheriff) may waive immunity by the purchase of liability insurance. See N.C. Gen. Stat. § 153A-435 ("Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function."). As stated in the statute, immunity is only waived to the extent the insurance covers the claim. Evans, 359 N.C. at 57 (citing N.C. Gen. Stat. § 153A–435(a) ("purchase of liability insurance waives county's governmental immunity to the extent of coverage")); Dawes v. Nash Cty., 357 N.C. 442, 446 (2003) (citation omitted) ("[i]mmunity is waived only to the extent that the [county] is indemnified by the insurance contract from liability for the acts alleged").

  Sheriff Defendants have submitted the applicable insurance policies for 2013, 2014, and 2015. (DE 64 at Ex. A and A-1; DE 82 at Ex. A.).[6] The argument between plaintiff and Sheriff Defendants centers on the following language found in all three policies:

> This policy is not intended by the insured to waive its governmental immunity by North Carolina General Statuses [sic] Sed. 153A-435 . . . . this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is

---

[6]The court may properly review these policies on this motion because they were specifically referenced in plaintiffs' amended complaint and were attached to Sheriff Defendants' answer and reply regarding motion for judgment on the pleadings. See Erie Ins. Exch. v. Builders Mut. Ins. Co., 227 N.C. App. 238, 243(2013) ("Here, defendant complains that the trial court improperly considered the terms of its insurance policy in ruling on plaintiffs' Rule 12(c) motion. However, defendant's insurance policy was specifically referenced in plaintiffs' amended complaint.").

asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

(DE 64, Ex. A at 25 and Ex. A1 at 24; DE 82, Ex. A at 25.)

Plaintiff argues the policies provide coverage for his claims against Sheriff Defendants in their official capacities, asserting 1) the existence of the surety bond has waived governmental immunity as to such official capacity claims, making the defense of governmental immunity clearly not applicable, and 2) a court of competent jurisdiction, this court, has previously determined that the defense of governmental immunity is not applicable to plaintiff's official capacity claims when the court granted plaintiff's request to join the sheriff's surety. (DE 79 at 20).[7]

North Carolina courts " have long followed the traditional rules of contract construction when interpreting insurance policies." Dawes, 357 N.C. at 448 (citations omitted). "If the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Id. at 448-49 (citation omitted).

Courts that have examined policies with the same immunity-exemption language quoted above consistently have held that immunity in those cases has not been waived. See, e.g., Evans v. Chalmers, 703 F.3d 636, 655-656 (4th Cir. 2012) (holding this "endorsement is clear and none of plaintiffs' arguments undermine its clarity"); Bullard v. Wake County, 221 N.C. App. 522 (2012)

_____

[7]The parties additionally dispute, but without any argument or legal support, whether the insurance policies at issue here provide coverage for plaintiff's §1983 claims and individual capacity claims against defendants. (See DE 79 at19; DE 82 at 9). Because the parties have not briefed this issue, the court declines to decide this issue at this time. The parties also contest whether the policies' $1,000,000.00 "retain limit," which functions as a $1,000,000.00 deductible, can be met by plaintiff based on the claims currently alleged. (DE 77 at12; DE 79 at 20-21). Because the court cannot determine at this time the amount of award plaintiff could obtain through plaintiff's §1983 claims and individual capacity claims, this question is not properly addressed at this stage of litigation. See Wilhelm v. City of Fayetteville, 121 N.C. App. 87, 90 (1995) (summary judgment not proper where plaintiff may receive an award in excess of city's immunity).

(same).  Here, Sheriff Defendants' insurance policy unambiguously states that Sheriff Defendants did not waive governmental immunity pursuant to N.C. Gen. Stat. § 153A-435.  Neither the purchase of the sheriff's bond nor the court's previous order granting plaintiff leave to amend plaintiff's complaint and join the Ohio Casualty alters this conclusion.

The court concludes that the exclusion in the policies is written so as to retain immunity from liability as to plaintiff's claims against Sheriff Defendants in their official capacities.  Accordingly, defendants' purchase of liability insurance does not provide an alternate or additional way in which plaintiff's claims against defendants can proceed against Sheriff Defendants in their official capacities.

2.      Public Officer's Immunity in Individual Capacities

Sheriff Defendants assert that plaintiff's negligence and gross negligence claims against Sheriff Defendants in their individual capacities are barred by the doctrine of public officer's immunity.  (DE 77 at 9).[8]  Under this doctrine, public officers or officials may not be held liable for negligence "in the performance of their governmental or discretionary duties."  Meyer v. Walls, 347 N.C. 97, 112 (1997).  Thus, a public officer may be liable in his individual capacity only when he is 1) malicious, 2) corrupt, or 3) acting outside of or beyond the scope of his duties.  Id.  A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another."  Grad v. Kaasa, 312 N.C. 310, 313 (1984).  An act is "wanton" where "it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others."  Id.  However,

_____

[8]Defendants do not argue, and the court does not address, the applicability of public officer's immunity to plaintiff's other claims.  See Maney v. Fealy, 69 F. Supp. 3d 553, 564–65 (M.D.N.C. 2014) (providing overview of conflicting case law concerning application of public officer's immunity to intentional torts and finding plaintiff failed to provide evidence of malice in order to overcome public officer's immunity in the context of a claim for battery).

there is a general presumption "that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551(1981) (internal citation omitted)

Plaintiff here makes sufficient allegations that defendants Spivey, Miller, and Legan's acts are such that "a man of reasonable intelligence would know" these acts "to be contrary to his duty" and that these acts manifest an intention "to be prejudicial and injurious to another." See Grad, 312 N.C. at 313. Plaintiff alleges that defendants Miller and Logan drove two separate patrol cars over 20 miles, reaching speeds of over 100 miles of hour, narrowly missing impact with the side panels of several civilian cars by inches, in order to confront plaintiff on plaintiff's private property. (DE 59 at 1). A confrontation ensued but ended, with plaintiff driving some distance away, performing "fishtails" and "donuts," on plaintiff's property. (DE 59 at 17). Defendant Spivey allegedly approached plaintiff's parked truck, demanded plaintiff move his truck which plaintiff refused as being unnecessary, and then defendant Spivey struck plaintiff with his baton twice and tried to drag him out of his truck. (DE 59 at 21-22). As plaintiff was being dragged out of his truck, the truck moved when plaintiff was forced to release the brake, and defendant Miller fired his pistol, hitting plaintiff twice. (DE 59 at 23-24). Finally, defendants Spivey, Miller, and Legan allegedly conspired to lie about the event, causing criminal proceedings against plaintiff to occur. (DE 59 at 24).

Plaintiff thus sufficiently alleges that defendants Spivey, Miller, and Legan acted maliciously, corruptly, or outside or beyond the scope of their duties.

Sheriff Defendants argue that plaintiff's gross negligence claims fail because a showing of gross negligence is not sufficient to overcome public officer's immunity. See Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir. 1994) (stating that "the North Carolina Supreme Court has never allowed

a showing of gross negligence to suffice to pierce an officer's immunity, absent a statute specifically abolishing the common law immunity").[9]  Sheriff Defendants are correct that a showing of gross negligence would be insufficient to overcome a public officer's immunity, but allegations, as set forth above, of malicious or corrupt acts, or acts outside the scope of duty can overcome such immunity in North Carolina, including in the context of a claim of gross negligence.  See Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013) (tying merits of gross negligence claim to reasonableness of officer's actions); Bailey v. Kennedy, 349 F. 3d 731, 745 (4th Cir. 2003) (affirming denial of public officer's immunity on the state common law gross negligence claims).

Therefore, plaintiff's claims of negligence and gross negligence against defendants Spivey, Miller, and Legan, in their individual capacities, are not barred by public officer's immunity.

Turning to specific negligence allegations, Ohio Casualty argues that plaintiff's assertion that Sheriff Defendants "failed to posses the necessary training and experience to serve as a deputy in the Wake County Sheriff's Office," does not state a claim for negligence or gross negligence because "[i]t neither identifies a duty owed to plaintiff nor does it indicate the breach of any existing duty imposed by law on sheriff deputies."  (DE 72 at 16).  Plaintiff argues that defendant is "cherry-picking" only one of many alleged negligent breaches and that defendants Spivey, Miller, and Legan "each owed a duty to plaintiff at the time they interacted with him to be properly trained to perform the duties expected of them as sworn law enforcement officers."  (DE 75 at 16).

Because the court determines below that plaintiff's claims of negligence and gross negligence are time barred against defendants Spivey, Miller, and Legan in their official capacities, the proper inquiry before the court is whether plaintiff states a negligence or gross negligence claim

---

[9] The Fourth Circuit has addressed the Shaw holding in an unpublished decision, reiterating that in order to pierce an officer's immunity, the key is whether there are sufficient allegations of malicious or corrupt actions and that Shaw stands for the proposition that where gross negligence is alleged but no malicious or corrupt actions are, plaintiff has failed to sufficiently plead around the officer's immunity.  Russ v. Causey, 468 Fed. Appx. 267, 273 (4th Cir. 2012).

against these defendants, in their individual capacities, regarding their failure to possess the necessary training and experience to serve as deputies. This allegation must fail in that plaintiff does not allege that these defendants, in their failure to possess the necessary training and experience, did so maliciously, corruptly, or outside or beyond the scope of their duties. See Meyer, 347 N.C. at112.[10]

Therefore, in sum, plaintiff's claims of negligence and gross negligence against defendants Spivey, Miller, and Legan, in their individual capacities, are not barred by public officer's immunity, but plaintiff's negligence claim against defendants Spivey, Miller, and Legan, in their individual capacities, regarding their failure to possess the necessary training and experience to serve as deputies, is DISMISSED.

3.      Statute of Limitations

Because the court finds that plaintiff has adequately pleaded waiver of sovereign immunity as to Sheriff Defendants as of October 6, 2016, the date plaintiff filed his motion to amend his complaint, joining Ohio Casualty, all claims against Sheriff Defendants in their official capacities must have accrued on or after October 6, 2013 in order to proceed.[11]  Defendants argue that the

---

[10]Ohio Casualty additionally disputes what appears to be plaintiff's position that intentional torts can provide a basis for a claim of negligence.  (See DE 59 at 35, 38, and 41) (stating that Sheriff Defendants Spivey, Logan, and Miller, are negligent or grossly negligent by "committing some or all of the following criminal offense: False Imprisonment; Criminal Conspiracy; Obstruction of Justice; Simple Assault and Battery in violation of the General Statutes of North Carolina and the common law of North Carolina (all of which are negligence within themselves)")). It appears that plaintiff further argues this point stating "[i]t is well established law in North Carolina that allegations for intentional wrongdoing can also give rise to claims of negligence, " (DE 75 at 15), citing to Lynn v. Burnette, 138 N.C. App. 435, 439 (2000) (holding that defendant's act, which both parties agreed was an intentional tort, also gave rise to claim of negligence).  To the extent that plaintiff is arguing that he may be able to pursue claims of negligence and intentional torts based on Sheriff Defendants' actions, the court agrees, see id.; however, as the Lynn court pointed out, "Negligence and intentional tort have been described as mutually exclusive theories of liability," id. at 440, and plaintiff must prove all elements of each claims alleged.

[11]The foundational events of plaintiff's claims occurred on July 5, 2013.  Plaintiff filed his first complaint on June 10, 2016, and sought permission from the court to file his second complaint on October 6, 2016, requesting sheriff's surety company be joined as a defendant.  The statute of limitations for some of plaintiff's claims is three years under North Carolina law.  See, e.g., N.C. Gen Stat. § 1-52(1a) (three year statute of limitations for suit upon the official bond of a public officer); N.C. Gen Stat. § 1-52(13) (three year statute of limitations against a public officer, for a

following claims against Sheriff Defendants in their official capacities with three-year limitations periods are barred: 1) negligence/gross negligence against Sheriff Defendants; 2) assault and battery against defendants Spivey and Miller and 3) false imprisonment against defendants Spivey, Miller, and Legan. Ohio Casualty additionally argues that 4) plaintiff's claim on suit on sheriff's bond is barred by the statute of limitations. The court will address each argument in turn below.

        a.      Negligence/Gross Negligence against Sheriff Defendants in their Official Capacities (First, Fourth, Sixth, and Eighth Causes of Actions)

North Carolina imposes a three-year statute of limitations on negligence actions. See N.C. Gen. Stat. § 1–52. A plaintiff thus has three years from the time a negligence claim accrues to file an action against the offending party. See id. "A cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed . . . ." Harrold v. Dowd, 149 N.C. App. 777, 781 (2002).

Plaintiff's allegations against defendant Harrison in his official capacity as Wake County Sheriff center on the failure of the sheriff to properly create the necessary policies and procedures to prevent the shooting that occurred on July 5, 2013 and failure of the sheriff to properly hire and train defendants Spivey, Miller, and Legan prior to the shooting. Here, plaintiff's allegations pertain to claims that necessarily accrued prior to October 6, 2013 and are therefore barred.

Plaintiff argues, however, he has adequately alleged negligence and gross negligence claims against defendant Harrison in his official capacity for wrongs that occurred after the July 5, 2013 shooting: "Sheriff Harrison improperly retained and/or promoted the deputy Defendants as employees; that he negligently failed to fire or suspend the Deputy Defendants; and that he failed

---

trespass, under color of his office); see also Fowler v. Valencourt, 334 N.C. 345, 350 (1993) (holding that N.C. Gen Stat. § 1-52(13) applies to "claims arising out of assault, battery, and false imprisonment by a public officer acting under the color of his office").

to properly supervise the activities of the Deputy Defendants during the two-year period while Plaintiff was being forced to endure a wrongful prosecution, incarceration, and deprivation of liberty." (DE 75 at 14 (interior citations omitted)).

All of the above assertions can be analyzed under North Carolina's law regarding negligent retention and supervision. "An essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in plaintiffs' injuries." Waddle v. Sparks, 331 N.C. 73, 87 (1992) (citing Hogan v. Forsyth County Club Co., 79 N.C. App. 483, 494-95 (1986) (holding a plaintiff must prove two elements to hold an employer liable for negligent supervision or retention: that an incompetent employee committed a tortious act resulting in injury to the plaintiff and prior to the act, the employer knew or had reason to know of the employee's incompetency)); see also Braswell v. Braswell, 330 N.C. 363, 373-74 (1991) (dismissing negligent supervision and retention claim, contrasting claims to other cases where the claims had been allowed and where the employer had full knowledge of employees tendencies).

Plaintiff alleges that defendants Spivey, Miller, and Legan lied to their supervisors, investigators, other third parties, and the court, causing plaintiff to be falsely imprisoned and maliciously prosecuted, which occurred, at least in part, after October 6, 2013. Therefore, the inquiry turns on whether plaintiff has sufficiently alleged that defendant Harrison knew or had reason to know of the defendants Spivey, Miller, and Legan's propensities to engage in such tortious acts before they took place. Here, the amended complaint is devoid of any allegation that defendant Harrison knew or had reason to know any such propensity concerning defendants Spivey, Miller, and Legan.[12] See Hogan, 330 N.C. at 373-74 (gathering cases and concluding North Carolina courts

---

[12]Plaintiff does allege that defendant Miller was fired from Wake County Sheriff's Office after the July 5, 2013 incident for lying or providing false information to his superiors. (DE 59 at 3). However, it is not alleged that defendant Miller was fired because of providing false information relating to the July 5, 2013 incident, nor is there information detailing when defendant Miller was fired. Most importantly, there is no connection provided between this alleged firing

have not allowed actions for negligent supervision and retention except in those cases that "involved well-known and certain, ongoing foreseeable harms").

Therefore, plaintiff's state law negligence and gross negligence claims against defendant Harrison in his official capacity are DISMISSED.

As stated above, North Carolina imposes a three year statute of limitations on negligence actions. See N.C. Gen. Stat. § 1–52. Plaintiff's negligence and gross negligence allegations against defendants Spivey, Miller, and Legan in their official capacities appear all based on the events that occurred on July 5, 2013 and are barred.

Plaintiff argues, however, that even after the shooting, "[p]laintiff was maliciously prosecuted, wrongfully incarcerated and detained, and forced to endure a jury trial based upon false criminal charges advanced by Sheriff Defendants" and that "[m]any of Plaintiff's causes of action arise from the acts, omissions, and continuing wrongful conduct of Sheriff Defendants during this period of time which persisted until the criminal jury returned a unanimous verdict in Plaintiff's favor on June 4, 2015." (DE 79 at 10). Although these allegations may relate to other claims brought by plaintiff against defendants, none of these allegations serve as a basis for a timely negligence claim. See Camalier v. Jeffries, 340 N.C. 699, 706 (1995) (holding under North Carolina law the essential elements of negligence are duty, a breach of that duty, causation, and damages).

Plaintiff additionally argues his negligence and gross negligence claims against these defendants in their official capacities are timely under the continuing wrong doctrine. The North Carolina Supreme Court has held:

> The general rule for claims other than malpractice is that a cause of action accrues as soon as the right to institute and maintain a suit arises. However, this Court has also recognized the "continuing wrong" or "continuing violation" doctrine as an

---

and defendant Harrison's prior knowledge of defendant Miller's propensities.

> exception to the general rule. When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases. A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

Williams v. Blue Cross Blue Shield of N. Carolina, 357 N.C. 170, 178-79 (2003). To determine whether plaintiff is suffering from a continuing violation, the court considers "the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." Id. at 179 (citing Cooper v. United States, 442 F.2d 908, 912 (7th Cir.1971)).

Plaintiff's amended complaint alleges a series of continuing wrongs committed by Sheriff Defendants including pursuing criminal proceedings against plaintiff and agreeing "to make false statements to investigators, their supervisors, to the jury during their sworn testimony at [plaintiff's] trial, and to other parties about [plaintiff's] conduct leading up to the shooting incident on July 5, 2013." (DE 59 at 44-45). These wrongs alleged, however, are separate claims from the claims of negligence and gross negligence plaintiff seeks to toll. Again, these allegations may relate to an application of the continuing wrong doctrine to other claims, but not to plaintiff's negligence and gross negligence claims against Sheriff Defendants. See, e.g., Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina, 345 N.C. 683, 429 (1997) (applying continuing violation doctrine to toll statue to limitations on breach of contract claim where the court found the contract repeatedly breached); Robert K. Ward Living Tr. ex rel. Schulz v. Peck, 229 N.C. App. 550, 554 (2013) (not applying continuing violation doctrine to toll breach of fiduciary duty and constructive fraud claims where defendant "no longer had legal authority to act under the trust and could not engage in a continuing course of wrongful conduct as trustee, although he could engage in wrongful conduct of a different sort").

Therefore, plaintiff's state law negligence and gross negligence claims against defendants Spivey, Miller, and Legan in their official capacities are DISMISSED.

      b.      Assault and Battery against Defendants Spivey and Miller, in their Official Capacities (Fifth and Seventh Causes of Action)

North Carolina imposes a three year statue of limitations on assault and battery claims against a public officer.  See  N.C. Gen Stat. § 1-52(13) (three year statute of limitations against a public officer, for a trespass, under color of his office); see also Fowler, 334 N.C. at 350 (holding that N.C. Gen Stat. § 1-52(13) applies to "claims arising out of assault, battery, and false imprisonment by a public officer acting under the color of his office").  All of plaintiff's assault and battery claims against defendants Spivey and Miller, in their official capacities, are based on events that occurred on July 5, 2013, and are time barred.  Therefore, plaintiff's assault and battery claims against defendants Spivey and Miller, in their official capacities, are DISMISSED.

      c.      False Imprisonment against Defendants Spivey, Miller, and Legan, in their Official Capacities (Tenth Cause of Action)

The parties agree that the applicable statute of limitations period for plaintiff's state law false imprisonment claims is three years; however, the plaintiff and Ohio Casualty do not agree when the statute of limitations for these claims began to run.

Plaintiff and Ohio Casualty both cite the North Carolina's Supreme Court's decision in Mobley v. Broome,  248 N.C. 54 (1958), overruled on other grounds by Fowler v. Valencourt, 334 N.C. 345 (1993).  In Mobley, the North Carolina Supreme Court stated that "[t]he right of action for false imprisonment accrues at the beginning of the imprisonment but does not become complete until the termination thereof, the tort being regarded as divisible." Id. at 56.  The Mobley court also stated "[i]n the case at hand, the plaintiff's right of action for false imprisonment accrued at the time of his unlawful arrest.  His cause of action was complete when he was released from custody by the giving of a bond, and limitations then began running." Id. (emphasis added).

As held in <u>Mobley</u>, a claim accrues when a plaintiff is, for example, "released from custody by the giving of a bond." <u>See also</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) (the court held in the context of a §1983 claim, that "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held <u>pursuant to such process</u>–when, for example he is bound over by a magistrate or arraigned on charges[;] [t]hereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution . . . ."); <u>Turner v. Thomas</u>, 235 N.C. App. 520, 538 (2014), <u>aff'd in part, rev'd in part</u>, 369 N.C. 419 (2016) (citing <u>Wallace</u>, 549 U.S. at 388-90) (regarding state-law false imprisonment claim, holding that plaintiff's complaint fails to state a claim for false imprisonment where he failed to allege that he was confined without "legal process or other legal authority" when he alleged he was arrested after being indicted by a grand jury and then released on house arrest); <u>see also</u> <u>Local 755, Int'l Bhd. of Elec. Workers, AFL-CIO v. Country Club E., Inc.</u>, 283 N.C. 1, 8 (1973) (interior citations omitted) (explaining "an action for malicious prosecution cannot be maintained unless the prior criminal prosecution was based on valid process. It is otherwise in actions for false arrest or false imprisonment. Whether an action is maintainable as an action for malicious prosecution or as an action for false arrest or imprisonment often turns upon whether the arrest or imprisonment is under valid process.").

The only specific "legal process or other legal authority" alleged by plaintiff concerning his imprisonment following his arrest is that he was able to bond out on November 15, 2013, less than three years before plaintiff filed his motion to amend his complaint, October 6, 2016. Therefore, plaintiff's claims for false imprisonment against defendants Spivey, Miller, and Legan, in their official capacities, are not barred by the statute of limitations.

d.       Suit on Sheriff's Bond (Third Cause of Action)

North Carolina imposes a three year statute of limitations on suit on sheriff's bonds. N.C. Gen. Stat. § 1–52(1a). Plaintiff has named the Ohio Casualty as a party defendant to this suit and has alleged a direct claim against its official bond under N.C. Gen. Stat. § 58–76–5. In particular, plaintiff alleges that Ohio Casualty is directly liable to plaintiff under plaintiff's suit on sheriff's bond and derivatively liable to plaintiff under plaintiff's other causes of actions for his injuries caused by Sheriff Defendants.

Ohio Casualty first argues that plaintiff's statutory cause of action against the bond is a separate and distinct cause of action under North Carolina law, and therefore the sovereign immunity waiver by purchase of the sheriff's bond can only apply to either a statutory claim under N.C. Gen. Stat. §§ 162-8 and 58-76-5 <u>or</u> plaintiff's common law claims. (<u>See</u> DE 72 at 11 ("a claim against a sheriff's bond is a statutory cause of action . . . if this Court should instead determine plaintiff's claim against the sheriff's bond is somehow a derivative claim based on plaintiff's causes of action alleged against the individual defendants to the extent of the bond . . . .").[13]

Plaintiff has alleged a separate cause of action, suit on sheriff's bonds, as allowed under North Carolina law against the Ohio Casualty; however, this cause of action is in addition to common law causes of action against Sheriff Defendants for which the Ohio Casualty is derivatively liable. <u>See</u> <u>State ex rel. Williams v. Adams</u>, 288 N.C. 501, 504 (1975) (citing <u>Dunn v. Swanson</u>, 217 N.C. 279 (1940)) ("Under this law, conduct for which the defendants might otherwise have been only personally liable would render both them and their surety liable on the official bond."); <u>Stafford</u>

---

[13]Plaintiff and Sheriff Defendants, however, agree that the sovereign immunity waiver by purchase of the sheriff's bond also applies to plaintiff's common-law claims. DE 75 at 5 ("There are several good reasons why the law provides a plaintiff the option of bringing common law claims against sheriff defendants directly, or, in addition, bringing a direct statutory claim against the surety bond"); DE 77 at 4 ("In its brief, the Wake Sheriff Defendants argues the bond does apply to such claims . . . .").

v. Barker, 129 N.C. App. 576, 585 (1998) (stating that in North Carolina, it is an "established principle that N.C.G.S. § 58-76-5 provides a plaintiff with a statutory cause of action in addition to a common law cause of action"); Summey, 142 N.C. App. at 691 (affirming denial of motion to dismiss where plaintiff asserted only official capacity claims against individual sheriff defendants and did not assert a statutory claim against the named Ohio Casualty).[14]

Ohio Casualty additionally argues that in the event it is a separate cause of action, the cause of action is untimely. The court disagrees. Plaintiff's third cause of action has its own statute of limitations: "Civil actions [upon the official bond of a public officer] can only be commenced within [three years], after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute." N.C. Gen. Stat. §§ 1–15(a), 1–52, 1–52(1a). Both plaintiff and Ohio Casualty appear to agree that the statute of limitations on this claim began to run upon the breach of the bond, (DE 72 at 7; DE 75 at 7), and there appears to be no dispute that plaintiff has adequately alleged the bond was breached on July 5, 2013. However, plaintiff alleges "multiple different breaches on the bond" beginning the day of the shooting on July 5, 2013 and including the two year period following. (DE 75 at 7). Plaintiff in particular points to his malicious prosecution claim (eleventh cause of action), which is not currently being challenged by any of the defendants, which both plaintiff and Sheriff Defendants agree did not accrue until the end of plaintiff's criminal trial. (DE 75 at 7; DE 82 at 6).

---

[14]Ohio Casualty also challenges the sufficiency of plaintiff's allegations under Iqbal as related to waiver of sovereign immunity for plaintiff's common-law claims, stating that "the only allegation of [Surety] defendant's liability is found within his third cause of action," the suit on sheriff's bond. (DE 72 at 11; DE78 at 3). However, all that is necessary for a plaintiff to adequately allege waiver of sovereign immunity by purchase of sheriff's bond in order for claims to go forward, even when only common law claims are asserted, is for plaintiff to allege a bond was purchased and bring a claim against a sheriff or his deputies in their official capacities along with the sheriff's surety. See N.C. Gen. Stat. § 58-76-5; Simmons, 122 F. Supp. 3d at 269-70 (finding under North Carolina law, the plaintiff sufficiently alleged waiver of sovereign immunity as to the sheriff when plaintiff alleged the sheriff purchased a bond and then plaintiff sued the sheriff and the surety on his official bond).

Ohio Casualty is liable for plaintiff's successful claims against Sheriff Defendants in their official capacities directly, because plaintiff brought a direct claim against Ohio Casualty, and derivatively, pursuant to the purchase of the sheriff's bond waiving sovereign immunity. <u>See</u> N.C. Gen. Stat. § 58–76–5 ("Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties . . . and every such officer <u>and the sureties</u> on his official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of his office) (emphasis added).

Therefore, similar to plaintiff's claims alleging sovereign immunity waiver by purchase of sheriff's bond, plaintiff's third cause of action to recover on the bond can be maintained for any "breaches of the bond" accruing on or after October 6, 2013.[15]

4.      Failure to State a Claim/Claim Deficiencies

a.      Plaintiff's Claim of Acts of Malice (Ninth Cause of Action)

Plaintiff pleaded "Acts of Malice, Acts of Corruption, and Acts Outside the Scope of Official Duties." (DE 59 at 42). Allegations of malice, corruption, or acts outside the scope of official duties are allegations that North Carolina recognizes as a means to sue governmental agents in their individual capacities, <u>see</u> <u>Hedgepeth v. Swanson</u>, 223 N.C. 442, 444 (1943), and the court has addressed these allegations above under its public officer's immunity analysis. Therefore, the court DENIES Ohio Casualty's motion to dismiss this claim. However, as a practical matter, the court notes plaintiff's ninth cause of action is not an independent cause of action.

---

[15]Ohio Casualty urges the court to also find that plaintiff's amended complaint adding Ohio Casualty does not relate back to plaintiff's original complaint pursuant to Fed. R. Civ. P 15(c)(1). (DE 72 at 8). Because plaintiff "is not relying on the relation back doctrine . . . because the statute of limitations has not run on any of plaintiff's claims," (DE 75 at 9), it is unnecessary for the court to address this argument. <u>See</u> <u>State ex rel. Redmond</u>, 202 N.C. App. 771 ("We note that Defendant Hamrick argues that Plaintiff's motion to amend his complaint to name the surety would be barred by the statute of limitations . . . . whether Plaintiff could proceed against the surety under the relation-back doctrine of N.C. Gen. Stat. § 1A-1, Rule 15 . . . . is not before us.").

b.	Plaintiff's Claim of False Imprisonment (Tenth Cause of Action)

Plaintiff brings claims against defendants Spivey, Miller, and Legan in both their individual and official capacities for false imprisonment.

In North Carolina, false imprisonment has been defined as "the illegal restraint of the person of any one against his will." Fowler, 334 N.C. at 345, 348 (citing State v. Lunsford, 81 N.C. 528, 530 (1879)). If not lawful or consented to, any restraint is unlawful. Hales v. McCrory–McLellan Corp., 260 N.C. 568 (1963). False arrest is a form of false imprisonment. Mobley, 248 N.C. at 56.

Ohio Casualty argues that plaintiff's arrest was lawful because plaintiff's arrest eventually resulted in a prosecution where charges against plaintiff were submitted to the jury. (DE 72 at 18). Ohio Casualty argues this submission establishes probable cause as a matter of law sufficient to justify plaintiff's arrest, and therefore plaintiff's claim of false imprisonment fails. (Id.). However, Ohio Casualty offers no legal authority, nor can the court find any, to support its argument that because the State of North Carolina's criminal charges against plaintiff survived a motion for directed verdict, that fact establishes the existence of probable cause for plaintiff's arrest. North Carolina courts have stated, however, that while a grand jury indictment in a criminal action is not conclusive to show probable cause in a malicious prosecution action, a conviction is, which does not support Ohio Casualty's position. See Smith v. Thomas, 149 N.C. 100 (1908) ("[T]his court has held in at least two previous adjudications that a conviction of the defendant in the criminal prosecution by a court of competent jurisdiction is conclusive in an action by him for malicious prosecution upon the question of probable cause"); Williams v. Kuppenheimer Mfg. Co., 105 N.C. App. 198, 201 (1992) ("While our Supreme Court has said that both a grand jury indictment and a waiver of a preliminary hearing in a criminal action establish a prima facie showing of probable cause, nevertheless, such a finding or waiver is not conclusive in a subsequent malicious prosecution

action, and the question of probable cause is still an issue for the jury."); <u>Myrick v. Cooley</u>, 91 N.C. App. 209, 213 (1988) (internal citation omitted) (in the context of malicious prosecution, "our appellate courts have followed the majority rule that absent a showing that the <u>conviction</u> in District Court was procured by fraud or unfair means, the <u>conviction</u> conclusively establishes the existence of probable cause, even through plaintiff was acquitted in Superior Court") (emphasis added).[16]

Here, the plaintiff has sufficiently alleged that his arrest, imprisonment, and prosecution lacked probable cause. Additionally, plaintiff was not convicted for any of the charges brought against him, which would have acted as a bar to his false imprisonment claim. <u>See</u> <u>Myrick</u>, 91 N.C. App. at 213. Plaintiff's claim for false imprisonment against defendants Spivey, Miller, and Legan in both their individual and official capacities for false imprisonment survive Ohio Casualty's motion to dismiss.

      c.    Plaintiff's Claim of Civil Conspiracy (Twelfth Cause of Action)

The North Carolina Supreme Court has "held that a complaint sufficiently stated a claim for civil conspiracy when it alleged 1) a conspiracy, 2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and 3) injury as a result of that conspiracy." <u>State ex rel. Cooper v. Ridgeway Brands Mfg., LLC</u>, 362 N.C. 431, 444 (2008) (citation omitted).

Defendants argue that plaintiff cannot maintain a claim for civil conspiracy and that such a claim does not exist in North Carolina. (<u>See, e.g.</u>, DE 72 at 19 ("North Carolina does not recognize

---

[16] Plaintiff argues that where an "officer presents false and deliberately misleading information to magistrates or judges – even if such information fools the court – the same cannot support a finding of probable cause." (DE 75 at 18). Plaintiff cites to the recent Supreme Court case stating in the context of a § 1983 claim that where a person is held pursuant to fabricated evidence, which provided the basis for the judge's probable cause determination, that person has a Fourth Amendment claim because "the Fourth Amendment's probable-cause requirement" has not been satisfied. <u>Manuel</u>, 137 S. Ct. at 918–919 (holding plaintiff "stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention"). Plaintiff does not allege sufficient details concerning his pre-trial detention for the court to determine the applicability, if any, of the Supreme Court's holding in <u>Manuel</u>. Additionally, it is unnecessary for the court to make such a determination at this time in that the court finds plaintiff sufficiently alleged a lack of probable cause.

a cause of action for civil conspiracy.")). Ohio Casualty cites in support of this contention <u>Dove v. Harvey</u>, 168 N.C. App. 687, 690 (2005). In <u>Dove</u>, the North Carolina Court of Appeals held that "there is not a separate civil action for civil conspiracy in North Carolina," but then clarified stating "a complaint must allege a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury," and emphasizing that in order to succeed in an action for civil conspiracy, one must prove an underlying wrongful act. <u>Id.</u> (citation omitted); <u>see</u> <u>Cooper</u>, 362 N.C. at 445 ("we affirm the portion of the Court of Appeals opinion that reinstated the civil conspiracy claim").

Plaintiff alleged that Sheriff Defendants agreed, implicitly or explicitly, "to falsely claim inaccurate facts about the July 5, 2013 encounter for the improper purposes of instituting criminal proceedings against [plaintiff], and to shield the truth of what had occurred," that Sheriff Defendants then repeatedly lied regarding the events of the day, and these lies led to plaintiff's unlawful incarceration. (DE 59 at 24). Thus, plaintiff has adequately alleged a claim for civil conspiracy, including the underlying wrongful act.

      d.     Plaintiff's Claim of Punitive Damages (Thirteenth Cause of Action)

For clarity, the court notes that a claim for punitive damages is also not a separate cause of action. The court will now address the parties' arguments concerning punitive damages.

Plaintiff clarifies in briefing that "in this action Plaintiff is not seeking an award for punitive damages against the Sheriff Defendants in their official capacities" but only against the Sheriff Defendants "in their individual capacities under state law claims" and "based upon Plaintiff's § 1983 claims." (DE 79 at 17).

Plaintiff cannot recover punitive damages from Sheriff Defendants in their official capacities, pursuant to plaintiff's § 1983 claims or otherwise. <u>See</u> <u>Biggs v. Meadows</u>, 66 F.3d 56, 61 (4th

Cir.1995) (in context of § 1983 action, stating punitive damages are unavailable in official capacity suits).[17]

## CONCLUSION

Based on the foregoing, Sheriff Defendants' motion for partial judgment (DE 76) is GRANTED IN PART and DENIED IN PART, and Ohio Casualty's motion to dismiss (DE 71) is GRANTED IN PART and DENIED IN PART. Accordingly, the following claims are DISMISSED:

1) state-law negligence and gross negligence claims against defendant Harrison in his official capacity (first cause of action);

2) state-law negligence and gross negligence claims against defendants Spivey, Miller, and Legan, in their official capacities (applicable to fourth, sixth, and eighth causes of action);

3) state-law negligence claims against defendants Spivey, Miller, and Legan, in their individual capacity, regarding their failure to possess the necessary training and experience to serve as deputies (applicable to fourth, sixth, and eighth causes of action); and

4) state-law assault and battery claims against defendants Spivey and Miller in their official capacities (applicable to fifth and seventh causes of action).

The following claims remain:

1) claims against defendants Spivey, Miller, and Legan regarding violation of civil rights pursuant to 42 U.S.C. § 1983 (second cause of action);

2) claims against Ohio Casualty to recover on sheriff's bond for any breaches of the bond accruing on or after October 6, 2013 (third cause of action);

3) negligence and gross negligence claims against defendants Spivey, Miller, and Legan, in their individual capacity, except regarding their failure to possess the necessary training and experience to serve as deputies (applicable to fourth, sixth, and eighth causes of action);

---

[17]Ohio Casualty generally requests that "this Court should dismiss plaintiff's claim for punitive damages to the fullest extent that it dismisses plaintiff's underlying causes of action." (DE 72 at 19). The court agrees that plaintiff cannot recover punitive damages on dismissed claims.

4)      state-law assault and battery claims against defendants Spivey and Miller in their individual capacity (applicable to fifth and seventh causes of action);

5)      false imprisonment claims against defendants Spivey, Miller, and Legan, in their official and individual capacities (tenth cause of action);

6)      malicious prosecution claims against defendants Spivey, Miller, and Legan (eleventh cause of action); and

7)      civil conspiracy (twelfth cause of action).

Additionally, the court has determined:

1)      plaintiff's surviving state-law claims against Sheriff Defendants in their official capacities is limited to the $20,000.00 amount of the sheriff's bond;

2)      defendants' purchase of liability insurance does not provide coverage for plaintiff's claims against Sheriff Defendants in their official capacities;

3)      plaintiff has adequately pleaded acts of malice, acts of corruption, and acts outside the scope of official duties sufficient to overcome public officer's immunity as applied to plaintiff's surviving state-law claims against Sheriff Defendants in their individual capacities (applicable to ninth cause of action); and

4)      plaintiff cannot recover punitive damages from Sheriff Defendants in their official capacities, pursuant to plaintiff's § 1983 claims or otherwise (applicable to thirteenth cause of action).

SO ORDERED, this the 29th day of September, 2017.


_____
LOUISE W. FLANAGAN
United States District Judge