IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-365-FL

| | |
|---|---|
| MICHAEL J. MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RICKY J. SPIVEY, in his individual and official capacities as a Wake County Sheriff's Deputy, CASEY L. MILLER, in his individual and official capacities as a Wake County Sheriff's Deputy, JOSHUA K. LEGAN, in his individual and official capacities as a Wake County Sheriff's Deputy, DONNIE HARRISON, in his official capacity as Sheriff of Wake County, North Carolina, THE OHIO CASUALTY INSURANCE COMPANY, individually, and as a subsequent subsidiary of LIBERTY MUTUAL INSURANCE COMPANY, as SURETY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER (placed to right of caption)

This matter is before the court on joint motion to compel filed by defendants Ricky J. Spivey ("Spivey"), Casey L. Miller ("Miller"), Joshua K. Legan ("Legan"), and Donnie Harrison ("Harrison") (collectively, "Sheriff Defendants") and Ohio Casualty Insurance Company ("Ohio Casualty") (DE 99) together with plaintiff's motion for protective order (DE 105). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, defendants' joint motion to compel is denied and plaintiff's motion for protective order is granted.

**BACKGROUND**

The court repeats here with some modification as pertinent to the instant motions the facts as stated in the court's September 29, 2017, order. Plaintiff commenced this action against Sheriff Defendants and Wake County, North Carolina on June 10, 2016, alleging various claims against the parties including: negligence, gross negligence, violation of civil rights pursuant to 42 U.S.C. §1983, suit on sheriff's bond, assault and battery, false imprisonment, malicious prosecution, and civil conspiracy. On September 6, 2016, defendant Wake County, North Carolina voluntarily was dismissed. On September 15, 2016, Sheriff Defendants filed a motion for partial judgment on the pleadings, which plaintiff responded to on October 6, 2016, also filing a motion to amend complaint, in order to join Ohio Casualty. On November 14, 2016, this court granted plaintiff's motion to amend and denied as moot Sheriff Defendants' motion for partial judgment on the pleadings. On November 23, 2016, plaintiff filed its amended complaint.

On January 20, 2017, defendant Ohio Casualty filed a motion to dismiss. On February 15, 2017, Sheriff Defendants filed a motion for partial judgment. On September 29, 2017, the court granted in part and denied in part both Ohio Casualty's motion to dismiss and Sheriff Defendants' motion for partial judgment, finding the following claims to remain:

    1) claims against defendants Spivey, Miller, and Legan regarding violation of civil rights pursuant to 42 U.S.C. § 1983;

    2) claims against Ohio Casualty to recover on sheriff's bond for any breaches of the bond accruing on or after October 6, 2013;

    3) negligence and gross negligence claims against defendants Spivey, Miller, and Legan, in their individual capacity, except regarding their failure to possess the necessary training and experience to serve as deputies;

    4) state-law assault and battery claims against defendants Spivey and Miller in their individual capacity;

5) false imprisonment claims against defendants Spivey, Miller, and Legan, in their official and individual capacities;

6) malicious prosecution claims against defendants Spivey, Miller, and Legan; and

7) civil conspiracy.

Previously plaintiff and defendants Spivey, Miller, and Legan filed consent motions for protective orders regarding production of plaintiff's tax returns and production of defendants Spivey, Miller, and Legan's personnel records. The court granted both motions on August 29, 2017. On October 16, 2017, defendants filed the instant joint motion to compel, related to plaintiff's treatment at Western Wake Treatment Center, to which plaintiff responded in opposition including the instant motion for protective order on November 20, 2017. Defendants filed their response to plaintiff's motion for protective order on November 29, 2017. Discovery closes on January 29, 2018.

## STATEMENT OF THE FACTS

The undisputed facts pertinent to the instant motions may be summarized as follows. On July 5, 2013, an altercation occurred between plaintiff and defendants Spivey, Miller, and Legan which resulted in plaintiff being shot twice. Following the shooting, plaintiff was prosecuted on various charges including multiple assault charges. On June 5, 2014, plaintiff was found not guilty of all charges that had not been previously dismissed. Plaintiff filed this suit on June 10, 2016, alleging "physical, emotional, and financial injury," including "severe physical pain, mental suffering, anguish, shock, [and] fright" as a result of the July 5, 2013 altercation. (Am. Compl. (DE 61) ¶ 203). In discovery, defendants sought in part information about medical treatment and mental health counseling plaintiff has received following the July 5, 2013 altercation, including treatment

3

and counseling received from Western Wake Treatment Center, a mental health counseling and methadone clinic.[1]

**COURT'S DISCUSSION**

A.   Standard of Review

Federal Rule of Civil Procedure 37 provides that when a party fails to respond to discovery, the party seeking discovery can move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). When addressing a motion to compel discovery, the trial court holds broad discretion. See LaRouche v. Nat'l Broadcasting Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.").

B.   Analysis

Defendants seek a court order compelling plaintiff to respond to questions concerning plaintiff's treatment received at Western Wake Treatment Center and directing the production of plaintiff's Western Wake Treatment Center medical records over plaintiff's objections. (DE 100 at 3). Specifically, defendants request the court to:

> 1. Compel plaintiff to respond to Sheriff Defendants' first set of interrogatories, which includes inquires about medical attention and mental health counseling, and related incurred expenses, sought for any of the injuries suffered as a result of the July 5, 2013 incident or thereafter;
>
> 2. Compel plaintiff to respond to Sheriff Defendants' requests for production of documents, request number three, which is as follows:

---

[1] Plaintiff testified in deposition that he has sought treatment from Western Wake Treatment Center since the treatment center opened in October 2015. (DE 99-3 at 10).

> All narrative medical reports, hospital records, and other health care reports which reflect medical treatment or mental health care counseling rendered to you as a result of the Arrest Incident or Trial Incident;

3. Compel plaintiff to respond to Ohio Casualty's second request for production of documents, which includes the following:

> All medical records and bills of any type whatsoever, statements, electronic data, charts, notes, records, reports, treatment or observation of any mental condition, alcoholism, substance abuse, narcotic additions or disorders of any kind and summaries of all medical treatment rendered to plaintiff at Western Wake Treatment Center;

4. Strike objections contained in plaintiff's responses to Ohio Casualty's request for production of documents which includes plaintiff's objections that the information sought from Western Wake Treatment Center is privileged, not proportional, protected by the Health Insurance Portability and Accountability Act ("HIPPA"), and not relevant in that plaintiff "is not seeking any damages for the fact that he has received methadone treatments, and he will not be asking the jury to award any compensation for the treatment he received at Western Wake Treatment Center." (DE 99-6 at 3);

5. Compel plaintiff to appear for a second deposition; and

6. Direct Western Wake Treatment Center to produce plaintiff's records.

(See DE 99-1, DE 99-6, DE 100 at 1-2).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). When challenged, as here, "[a] party claiming that a request is important to resolve [certain] issues should be able to explain the ways in which the underlying information bears

on the issues as that party understands them." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 amend.).

Relevance in the context of Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." Id. at 351 n. 12 (quotations omitted).[2]

Here, plaintiff alleges "physical, emotional, and financial injury," including "severe physical pain, mental suffering, anguish, shock, [and] fright" as a result of the July 5, 2013 altercation. (Am. Compl. (DE 61) ¶ 203). Additionally, plaintiff testified that he is receiving treatment from Western Wake Treatment Center for the physical and mental injuries he alleges he suffered as a result of the July 5, 2013 incident. (See pl.'s dep. (99-3) at 16-17, 23-24). Therefore, plaintiff has put his medical, physical, and psychological condition, including his substance abuse treatment, at issue.

Plaintiff argues that the information sought is protected in that federal law 1) recognizes a psychotherapist-patient privilege and 2) limits the disclosure of substance abuse treatment information. The court will address each argument in turn below.

1. Psychotherapist-Patient Privilege under Federal Law

Under Federal Rule of Evidence 501, matters of privilege in federal courts are to be resolved based on the common law "as interpreted by United States courts in the light of reason and

---

[2] The 2015 amendment to Rule 26 changed the language in subsection (b)(1) in several ways described and set forth in the Advisory Committee Notes to the 2015 amendment. For example, the amendment "delete[d] the former provision authorizing the court, for good cause, to order discovery on any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26, Advisory Committee Notes (2015 amend.). While this deletion could be construed as narrowing what qualifies as "relevant," the Advisory Committee Notes suggest otherwise, "given a proper understanding of what is relevant to a claim or defense." Id. As such, the court continues to rely upon case law set forth in the text predating the 2015 amendment to the rule, with respect to the meaning of the term "relevant."

experience" unless it is contrary to the "United States Constitution," a "federal statute," or the "rules prescribed by the Supreme Court."[3] In Jaffee, the Supreme Court resolved a circuit split when it "recognize[d] a psychotherapist privilege under Rule 501" in the context of a § 1983 excessive force action. Jaffee v. Redmond, 518 U.S. 1, 7 (1996). As stated by the Court, the privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem" and "[t]he mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." Id. at 11. Under Jaffee, a party asserting a psychotherapist-patient privilege must show that the allegedly privileged communications were made in confidence, between a licensed psychiatrist, psychologist, or social worker and his or her patient, in the course of diagnosis or treatment. Id. at 15.[4]

The Fourth Circuit, following Jaffee, has recognized this privilege and has stated that "[a] patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it." United States v. Bolander, 722 F.3d 199, 221-23 (4th Cir. 2013) (holding that federal inmate waived any psychotherapist-patient privilege when he willing provided the sought materials to his own expert and did not properly assert privilege); see also United States v. Lara, 850 F.3d 686, 691 (4th Cir. 2017) (defendant waived psychotherapist-patient privilege that may have applied to incriminating statements he made while participating in sex offender treatment program by signing waiver of treatment program confidentiality). The court in Bolander stated that a waiver may occur

---

[3] The rule continues: "However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R. Evid. 501. However, this case involves a federal question together with pendent state law claims. The Fourth Circuit has stated "[w]e agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies." Virmani v. Novant Health Inc., 259 F.3d 284, 287 n. 3 (4th Cir. 2001). Thus, because this court's jurisdiction is based on a federal question, Federal Rule of Evidence 501 is the applicable law of privilege in this case.

[4] In a footnote, the Court noted that the patient may waive this privilege, like other testimonial privileges, but did not further address the issue of waiver. Id. at 15 n. 14.

7

when 1) "when the substance of therapy sessions is disclosed to unrelated third parties" or 2) "when the privilege is not asserted during testimony." Bolander, 722 F.3d at 223.

Defendants potentially seek, at least in part, discovery protected by psychotherapist-patient privilege. (See, e.g., DE 99-6 (requesting "[a]ll medical records and bills of any type whatsoever, statements, electronic data, charts, notes, records, reports, treatment or observation of any mental condition, alcoholism, substance abuse, narcotic additions or disorders of any kind and summaries of all medical treatment rendered to plaintiff at Western Wake Treatment Center"); see also pl.'s dep. (DE 99-3) at 24 (defendants seeking information from plaintiff regarding counseling sessions at Western Wake Treatment Center)). However, defendants have not offered, and the court is not aware of, any instance where plaintiff has either disclosed the substance of his therapy sessions to unrelated third parties or did not assert the privilege during testimony. The record indicates otherwise. (Compare pl.'s dep. (DE 99-3) at 12 (plaintiff's attorney asserting privilege based on "protocols of the facility in terms of confidentiality") with Bolander, 722 F.3d at 223 (at deposition Bolander "did not assert any privilege" and "openly discussed his participation" in the program)). Defendants argument that this privilege can be waived by the placing of mental health at issue in litigation is inconsistent with the Supreme Court's decision in Jaffee and the Fourth Circuit's decision in Bolander.

Therefore, the court finds good cause pursuant to Rule 26(c) to issue a protective order shielding from discovery or trial any information protected by the psychotherapist-patient privilege, in other words any communications that were made in confidence, between a licensed psychiatrist, psychologist, or social worker and plaintiff, in the course of diagnosis or treatment. See Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery.").

  2.  Substance Abuse Treatment Information under Federal Law

Under federal law, disclosure of medical records relating to the treatment of drug and alcohol abuse patients in federally funded, regulated, or assisted treatment program is governed by the provisions of Title 42 U.S.C. § 290dd–2 ("Public Health Service Act"):

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd–2(a).

Disclosure is permitted if the patient provides prior written consent. 42 U.S.C. § 290dd–2(b)(1). If a patient refuses to consent, disclosure is permitted:

> (C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd–2(b)(2)(C).

The statute also expressly authorizes the Secretary of the Department of Health and Human Services ("HHS") to develop "procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section." 42 U.S.C. § 290dd–2(g). Pursuant to that authority, the

Secretary of HHS has promulgated regulations implementing the statutory disclosure provisions. See 42 C.F.R. §§ 2.1–2.67.

Section 2.64 of the regulations defines "good cause" within the meaning of § 290dd–2(b)(2)(C):

> An order under this section may be entered only if the court determined that good cause exists. To make this determination, the court must find that:
> (1) Other ways of obtaining the information are not available or would not be effective; and
> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d).

Furthermore, § 2.63 of the regulations limits the court's power under the statute to authorize disclosure of "confidential communications," providing, in relevant part, that:

> (a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:
> (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining <u>to the content</u> of the confidential communications.

42 C.F.R. § 2.63(a)(3)(emphasis added). Therefore, if the information sought contains "confidential communications," a party must satisfy both the "good cause" requirements of § 290dd–2(b)(2)(C) and the requirements of Subdivision (a)(3). For non-confidential communications, a party must only satisfy the "good cause" test set forth in § 290dd–2(b)(2)(C).[5]

Defendants argue they "have no other way of obtaining the information regarding Plaintiff's treatment for his alleged pain and suffering and mental anguish . . . ." (DE 106 at 3). However,

---

[5] The Fourth Circuit has addressed this statutory scheme once, in <u>Doe v. Broderick</u>, 225 F. 3d 440 (2000), and in a context different than that which is before this court. In <u>Broderick</u>, a plaintiff filed a § 1983 suit against a police officer who conducted an unlawful search and seizure of plaintiff's confidential treatment records from a methadone clinic. The court found § 290dd–2 "relevant to the determination of whether there is a 'societal understanding' that Doe has a legitimate expectation of privacy in his treatment records," ultimately finding Doe did have a legitimate expectation of privacy in the records. <u>Id.</u> at 450.

plaintiff asserts that he has already produced his past and incident-related medical records to defendant, defendants have access to depose plaintiff's medical treatment providers, and defendants have already deposed the treating trauma surgeon who repaired plaintiff's gunshot wound to his hand, including asking questions about plaintiff's pain medications, pain levels, and opioid dependency. (DE 105 at 10).

Defendants additionally argue that plaintiff's records are subject to discovery because plaintiff has put his medical treatment at issue and that defendants "must be given an opportunity to test the veracity of Plaintiff's alleged damages to be able to defendant against those claimed damages." (DE 106 at 3; see DE 100 at 6). First, defendants' position appears to conflate "good cause" under this statutory scheme with relevance. That plaintiff has put his medical treatment at issue does not necessarily mean the standard for "good cause" articulated by the regulations above has been met. Second, plaintiff in response to discovery requests, in his deposition, and in his submissions in opposition to defendants' motion to compel has numerous times asserted that he does not seek damages related to his methadone treatment or his use of methadone; therefore, it is unclear what damages these records will verify.[6] Defendants have stated only that plaintiff's records have been put at issue and have offered no reason why plaintiff's methadone treatment records are needed, why the medical records already received are deficient, or why the methadone treatment records redacted, as previously offered by plaintiff, are insufficient.[7]

---

[6] Plaintiff argues that he has "made it clear he is not and never will be seeking any form of damages in this action for any facts related to his methadone treatment or use of methadone." (DE 105 at 2 (emphasis in original); see also id. at 9 ("Though Plaintiff did testify that he receives some pain relief from the methadone he takes, he testified numerous times that the reason he goes to the clinic is not the pain he experiences from this incident, but rather to help conquer his opioid dependency")).

[7] "Plaintiff notes that "in an effort to resolve this discovery dispute, Plaintiff offered to produce to the defense his methadone records in redacted form showing any entries about the dates of his visits, his reported pain levels/descriptions, his methadone prescriptions, and any statements he may have made regarding the shooting incident." (DE 105 at 10; see also emails regarding redacted records offer (DE 105-4)).

11

Accordingly, the court finds that good cause has not been shown for the release of plaintiff's Western Wake Treatment center medical records.[8] To the extent that the responsive records are maintained in connection with a substance abuse treatment program within the meaning of § 290dd–2 and are not protected under the psychologist-patient privilege, the court finds good cause to issue a protective order shielding from discovery or trial that information related to the treatment received by plaintiff at Western Wake Treatment Center pursuant to Rule 26(c). Additionally, the court denies defendants request to award them attorney's fees pursuant to Rule 37(a)(5).

## CONCLUSION

Based on the foregoing, defendants' joint motion to compel (DE 99) is DENIED and plaintiff's motion for protective order (DE 105) is GRANTED. Defendants request for attorney's fees is DENIED.

SO ORDERED, this the 8th day of December, 2017.

LOUISE W. FLANAGAN  
United States District Judge

---

[8] Inasmuch as defendants have not satisfied the "good cause" standard in § 2.64(d), the court need not address whether defendants have satisfied the even more restrictive requirements in § 2.63(a) that apply to plaintiff's "confidential communications."