IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-365-FL

| MICHAEL J. MORGAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| RICKY J. SPIVEY, in his individual and official capacities as a Wake County Sheriff's Deputy, CASEY L. MILLER, in his individual and official capacities as a Wake County Sheriff's Deputy, JOSHUA K. LEGAN, in his individual and official capacities as a Wake County Sheriff's Deputy, and THE OHIO CASUALTY INSURANCE COMPANY, individually, and as subsequent subsidiary of Liberty Mutual Insurance Company, as Surety, | ) | |
| Defendants. | ) | |

This matter came before the court at final pretrial conference September 3, 2019, in advance of jury trial to commence September 16, 2019, on defendants' motion at conference to exclude expert testimony regarding the policies of the Wake County Sheriff's Office ("WCSO") on use of force, their motions in limine to exclude evidence of alternative tactics (DE 143) and of liability insurance (DE 149), and defendants' motion raised at conference to bifurcate trial should the court disagree with defendants' position that no mention should be made at trial about the existence of any insurance.[1] For the reasons that follow, defendants' motions to exclude expert testimony regarding

---

[1] A myriad of other motions also were considered and addressed from the bench at final pretrial conference.

WCSO policies, evidence of alternative tactics, and evidence of liability insurance all are denied. Defendants' contingent motion to bifurcate trial on punitive damages, to which plaintiff consented in part, is allowed.

**COURT'S DISCUSSION**

A.   Defendants' Motion to Exclude Expert Testimony on WCSO Policies

At pretrial conference, defendants moved to exclude any reference by plaintiff's expert witness to WCSO policies in giving an opinion as to whether the use of force was reasonable in the instant case. Defendants principally rely upon an opinion from the Seventh Circuit, which held that consideration of a police department's general order on the use of force "sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006).

However, the Fourth Circuit has held that an expert may refer to an officer's training on use of a gun, or standards of conduct for using weapons, to help provide an opinion on objective reasonableness of that officer's actions. Kopf v. Skyrm, 993 F.2d 374, 379 (4th Cir. 1993); see, e.g., Henry v. Purnell, 501 F.3d 374, 384 (4th Cir. 2007) (remanding for consideration of defendant's training on use of handguns and tasers); United States v. Mohr, 318 F.3d 613, 624 (4th Cir. 2003) ("We explained that an 'objective reasonableness' test like that used to determine the reasonableness of force 'implies the existence of a standard of conduct,' and where that standard is defined, not by a reasonable person, but by a reasonable officer, 'it is more likely that Rule 702's line between common and specialized knowledge has been crossed.'").

The Seventh Circuit does not share defendants' interpretation of its own case law either. In

a recent decision, that court emphasized that:

> Despite its strong language, Thompson should not be understood as establishing a rule that evidence of police policy or procedure will never be relevant to the objective-reasonableness inquiry. We recently clarified that expert testimony concerning police policy is not categorically barred. See Florek v. Village of Mundelein, 649 F.3d 594, 602–03 (7th Cir. 2011). Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field. In those instances an expert's specialized knowledge can "help the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. Fed. R. Evid. 702(a).

United States v. Brown, 871 F.3d 532, 537 (7th Cir. 2017).

Other circuits also are in accord. See, e.g., Stamps v. Town of Framingham, 813 F.3d 27, 32 n.4 (1st Cir. 2016) ("The defendants argue that we may not consider police training and procedures in determining whether there was a Fourth Amendment violation. We disagree. Such standards do not, of course, establish the constitutional standard but may be relevant to the Fourth Amendment analysis. We have approved the taking of evidence about police training and procedures into consideration."); Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003) ("Although such training materials are not dispositive, we may certainly consider a police department's own guidelines when evaluating whether a particular use of force is constitutionally unreasonable."); McCoy v. City of Monticello, 342 F.3d 842, 849 (8th Cir. 2003) (holding that a jury must evaluate "the circumstances from the perspective of a reasonable officer following customary police practices").

Where the law of this circuit and other circuits counsels against defendants' position, defendants' motion to exclude reference by plaintiff's expert to WCSO policies, training, and standards of conduct regarding use of force is denied. Plaintiff's expert may refer to the subject

policies and procedures to support his opinions as to what a reasonable officer would do under the circumstances of this case.

B.      Defendants' Motion to Exclude Evidence of Alternative Tactics (DE 143)

Defendants also move to exclude evidence of "alternative tactics" that defendants could have employed instead of using force. Defendants speculate on several different lines of argument that plaintiff may try to offer, including 1) defendant Spivey could have avoided trying to arrest plaintiff, 2) defendant Spivey could have driven around plaintiff's truck or backed up and left the field through another entrance, 3) defendant Spivey could stand by and watched then tried to give plaintiff a ticket, 4) defendant Miller could have used a Taser, and 5) defendant Miller could have stood by and not used any force to stop the truck from dragging defendant Spivey.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). "[T]he reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed." Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005) (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996); Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991)). Reasonableness of officers' conduct depends on the totality of the circumstances. Hensley on behalf of N. Carolina v. Price, 876 F.3d 573, 582 (4th Cir. 2017) (citing Yates v. Terry, 817 F.3d 877, 883 (4th Cir. 2016)). Where multiple uses of force are involved, "[t]he better way to assess the objective reasonableness of force is to view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994).

Whether force is excessive depends upon "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (citing Graham, 490 U.S. at 396). The court also considers the extent of the plaintiff's injuries. Rowland, 41 F.3d at 174. Absence of probable cause supporting a crime is relevant to the reasonable force inquiry because it goes to the severity of the crime at issue. See Hupp v. Cook, 931 F.3d 307, 322 (4th Cir. 2019) ("Certainly, we may consider any lack of probable cause for the arrest as we evaluate the reasonableness of the force used. But we consider the crime that is alleged to have been committed in connection with our overall analysis of all of the circumstances surrounding the use of force."); Jones v. Buchanan, 325 F.3d 520, 528 (4th Cir. 2003); cf. Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019) (finding questions of fact remained in a § 1983 case regarding probable cause to arrest plaintiffs based on allegedly involuntary confessions).

Plaintiff correctly points out that evidence of defendant Spivey's and defendant Legan's actions prior to defendant Spivey using force on plaintiff are integral to plaintiff's claims of unlawful search and unlawful arrest. With respect to defendant Spivey in particular, plaintiff claims defendant Spivey lacked probable cause to arrest plaintiff for obstruction. Probable cause means that, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010). Whether a reasonable person would believe probable cause existed to find plaintiff obstructed defendant Spivey depends on factors including whether defendant Spivey knew he could have left plaintiff's property by another means, or whether defendant Spivey knew he could have driven around plaintiff's truck. Thus,

5

defendant Spivey's actions are admissible to prove unlawful arrest. Likewise, defendant Spivey's actions prior to using of force are admissible at trial to prove excessive force insofar as they show that plaintiff committed no crime. See Hupp, 931 F.3d at 322; Jones, 325 F.3d at 528.

In remaining part, plaintiff concedes that the existence of a lesser use of force does not make the greater use of force unreasonable. See Elliott, 99 F.3d at 643. However, plaintiff also argues his expert should be allowed to introduce evidence of defendants' training and relevant police procedures to demonstrate what is objectively reasonable under the circumstances. See Kopf, 993 F.2d at 379. On this remaining portion of defendants' motion, the court denies defendants' motion for the same reasons it denies defendants' motion to exclude expert testimony regarding WCSO training, policies, and standards of conduct.

C.    Defendants' Motion to Exclude Evidence of Liability Insurance (DE 149)

Defendants move to exclude evidence of liability insurance, including mention of any sheriff's bond and/or liability insurance policy covering WCSO to the jury. The thrust of this motion appears directed towards the latter, which plaintiff seeks to disclose to the jury in advance of deliberations on any punitive damages award.

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411; see Langley v. Turner's Exp., Inc., 375 F.2d 296, 297 (4th Cir. 1967). However, evidence of liability insurance is admissible for purposes other than proving plaintiff acted negligently or wrongfully. See Fed. R. Evid. 411; Ventura v. Kyle, 825 F.3d 876, 883 (8th Cir. 2016). The Fourth Circuit has held that "a defendant's financial position is a proper consideration in assessing punitive damages." Stamathis v. Flying J, Inc., 389 F.3d 429, 442 (4th Cir. 2004) (citing Pacific Mut. Life Ins. Co. v. Haslip, 499

6

U.S. 1, 22 (1991)); see Saunders v. Branch Banking And Tr. Co. Of VA, 526 F.3d 142, 154 (4th Cir. 2008) (considering defendant's net worth in evaluating if a punitive damages award was excessive).

While the Fourth Circuit has not expressly reached the issue of whether liability insurance is admissible for purposes of determining any punitive damages award, other persuasive authorities suggest the Fourth Circuit's holdings regarding consideration of net worth for punitive damages purposes embrace liability insurance. Other circuit courts have recognized that the "ultimate source of payment," such as a liability insurance policy, is admissible on the issue of punitive damages because "[t]he jury must know the impact an award will have on the defendant to properly assess punitive damages." Perrin v. Anderson, 784 F.2d 1040, 1048 (10th Cir. 1986); Rodgers v. Fisher Body Div., Gen. Motors Corp., 739 F.2d 1102, 1105 (6th Cir. 1984). As plaintiff points out, a district court within this circuit has taken a similar stance. Wallace v. Poulos, 861 F. Supp. 2d 587, 601 (D. Md. 2012). Additionally, commentators have recognized that "Rule 411 does not prohibit the use of evidence of insurance where it is relevant to the question of . . . punitive damages." Charles A. Wright & Victor Gold, 23 Fed. Prac. & Proc. § 5364 (3d ed. 2018).

While not admissible to prove fault, evidence of any liability insurance policy providing coverage is admissible for the limited purpose of proving punitive damages. Accordingly, defendants' motion to exclude evidence of liability insurance is denied.

D.     Defendants' Motion to Bifurcate Trial of Plaintiff's Punitive Damages Claims

At final pretrial conference, defendants moved, should the court decide against them on the issue of insurance, that trial of this case be bifurcated for purposes of determining punitive damages. Plaintiff did not disagree with bifurcation in such instance, but ultimately asked that the court only bifurcate the issue of the amount of punitive damages, leaving for the first phase of trial the question

7

of whether punitive damages should be awarded.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the trial court has authority to bifurcate a trial with respect to the issues of liability and damages. Rule 42(b) states:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial under Rule 42(b) is committed to the sound discretion of the trial court. See, e.g., In re Hutchinson, 5 F.3d 750, 758 (4th Cir. 1993); Dixon v. Transp., Inc., 990 F.2d 1440, 1443, 1445 (4th Cir. 1993); Bedser v. Horton Motor Lines, 122 F.2d 406, 407 (4th Cir. 1941). "A trial must remain fair to both parties, and . . . considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice." Dixon, 990 F.2d at 1445 (quotation omitted).

At final pretrial conference, the court took the question concerning disclosure to the jury of any insurance under advisement; however, it declared that if it ruled against defendants, as here, bifurcation would not be accomplished as plaintiff suggested. Rather, as defendants proposed, the trial would be, as it now is, bifurcated into 1) a liability and compensatory damages phase; and 2) a punitive damages phase, if appropriate in the instant case, including in that second phase decision on the question of whether any punitive damages should be awarded and if so, in what amount. In this second trial phase any evidence of insurance may be disclosed in accordance with the foregoing.

Again, as noted above, the introduction of evidence of liability insurance to prove liability is reversible error, but it is relevant as to the issue of punitive damages. Bifurcation eliminates any

8

risk of prejudice by separating the issues of liability and compensation from punishment. The delay caused by bifurcation to exclude this potentially prejudicial evidence from the liability portion of the trial is minimal, as the parties represented at conference that most of the evidence regarding punitive damages will already have been heard by the jury in the liability and compensatory damages phase. Defendants' contingent motion to bifurcate trial is met with favor.

## CONCLUSION

Based on the foregoing, defendants' motions to exclude expert testimony regarding WCSO policies on use of force made September 3, 2019, evidence of alternative tactics (DE 143), and evidence of liability insurance (DE 149) all are DENIED. Defendants' contingent motion to bifurcate trial of plaintiff's punitive damages claims, raised September 3, 2019, is ALLOWED.

SO ORDERED, this the 5th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge